```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DOREEN LUDWIG                    :     CIVIL ACTION
                                 :
     v.                          :
                                 :
CARPENTERS HEALTH & WELFARE      :
FUND OF PHILADELPHIA &           :
VICINITY, et al.                 :     NO. 08-809
```

MEMORANDUM

McLaughlin, J.                                      September 18, 2009


The plaintiff, a former spouse of a vested participant in various benefits plans, claims that the defendants, the benefits plans themselves,[1] denied the plaintiff health coverage and her assigned share of her former husband's benefits and acted in bad faith during and after her divorce proceedings.  After learning of the plaintiff's divorce several months after it became final, the plans notified the plaintiff that she was not entitled to continued medical coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") because the plans were not given timely notice of the divorce.  They further

---

[1] The plaintiff named as defendants the Carpenters Health & Welfare Fund of Philadelphia and Vicinity, Mary Hackett, an employee of the funds, and Jacqueline Mark, the plaintiff's ex-husband's attorney during the divorce proceedings.  Because the plaintiff's complaint also implicated the Carpenters Pension and Annuity Fund of Philadelphia & Vicinity and the Carpenters Savings Fund of Philadelphia & Vicinity, these two funds also answered the complaint and moved for summary judgment.  The Court previously dismissed Attorney Mark as a defendant in its July 30, 2008 Order.  The Court's ruling today therefore applies to the funds collectively and Ms. Hackett.

informed her that payments from her husband's pension and savings funds awarded to her in the divorce decree would be honored, but not at this time, because her husband had not yet qualified for a disbursement.  The plaintiff sued the plans, alleging violations of various federal civil rights statutes and the Employee Retirement Income Security Act ("ERISA").  The defendants have moved for summary judgment.  The Court will grant the defendants' motion.

I.   Summary Judgment Record[2]

The plaintiff is the former spouse of Chester Stepien.  Mr. Stepien is a participant in the three plans here at issue (collectively, the "Funds"):  the Carpenters Health & Welfare Fund of Philadelphia & Vicinity (the "Welfare Fund"); the Carpenters Pension and Annuity Fund of Philadelphia & Vicinity (the "Pension Fund"); and the Carpenters Savings Fund of Philadelphia & Vicinity (the "Savings Fund").  Each of the Funds is an "employee pension benefit plan" within the meaning of ERISA.  Defs.' M. for Summ. J. ("Defs.' M.") 2.  Mr. Stepien is a member of Local Union 1906 and has never been an employee of the Funds.  Pl.'s Compl. ¶ 14; Declaration of Piotr Tonia ¶ 16 ("Tonia Decl."), attached as Ex. A to Defs.' M.

---

[2] On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The plaintiff and Mr. Stepien were divorced on November 6, 2006, according to a divorce decree entered by the Honorable Scott D. Keller in the Court of Common Pleas, Berks County, Pennsylvania.  Declaration of Mary Hackett Ex. MH-6 ("Hackett Decl.") attached as Ex. B to Defs.' M.  The decree awarded the plaintiff both money and certain benefits, stated in relevant part as follows:

> Said sum [of $132,505.22] shall be paid to Plaintiff within sixty [60] days of the entry of this Decree in the following manner:
>
> a.  $75,000.00 in cash; and
> b.  $11,500.00 from Defendant's Carpenter's (Dreyfus) savings fund; and
> c.  $45,730.22 from Defendant's Carpenter's Fund Annuity.
>
> . . . .
>
> For the period that health insurance coverage is available to Plaintiff through Defendant's employment under the provisions of C.O.B.R.A, Plaintiff and Defendant shall equally share the costs of the premiums for such insurance.
>
> At the end of the period of eligibility under C.O.B.R.A., Plaintiff shall be solely responsible for the cost of her own health insurance.

Id. at A2, C1-2.

On March 27, 2007, the plaintiff and Mr. Stepien appeared once again before Judge Keller for an unspecified reason.  Pl.'s Compl. ¶¶ 33-34.  At this proceeding, Mr. Stepien's attorney stated to the court that a union member,

3

identified by the plaintiff in her complaint as "John Doe," told Mr. Stepien that the union would extend COBRA benefits to the plaintiff.  Id. at 34.

The defendants were never a party to the divorce proceedings nor the proceedings in March 2007.  Hackett Decl. ¶ 16.  They did, however, in response to a letter of request from Mr. Stepien's attorney, submit during the divorce proceedings fund information that was used to value Mr. Stepien's assets. Id.  Although the plaintiff claims that the Funds were aware of the divorce proceedings between the plaintiff and Mr. Stepien from as early as March 2005, it is undisputed that the Funds were informed of the plaintiff's final divorce in April 2007, and they received written notice of the divorce in June 2007.  Tonia Decl. ¶¶ 11-12; Deposition of Doreen Ludwig 11-13 ("Ludwig Dep."), attached as Ex. JS-1 to Declaration of Judith Sznyter, Ex. C of Defs.' M.  It is unclear who forwarded notice to the Funds in April and June.

Upon receiving written notice of the divorce in June 2007, the defendants alerted the plaintiff to the status of her benefits.  The Welfare Fund sent a letter to the plaintiff on June 29, 2007, stating that COBRA coverage was not available to the plaintiff because the plaintiff did not furnish timely notice of her divorce, a qualifying event.  Tonia Decl. Ex. PT-4; Defs.' M. 8.  The plaintiff did not appeal this decision.  Tonia Decl.

4

¶ 14.  The Pension Fund and the Savings Fund sent determination letters to the plaintiff on July 31, 2007 and August 1, 2007, respectively, stating that the plaintiff's divorce was a Qualified Domestic Relations Order ("QDRO") under 29 U.S.C. § 1056(d)(3) and would be honored by both funds.  Hackett Decl. Ex. MH-7, MH-8.  The letters further explained the Funds' policy for lump sum distributions:

> The Plan provides for lump sum distribution of Annuity [and Savings] Account money only if the participant dies, retires, is separated from contributory service for 24 months, or (for a QDRO only) reaches age 50. Mr. Stepien is not currently eligible for a lump sum distribution from his Annuity [or Savings] Account nor is an immediate QDRO distribution available under the age 50 rule. We will NOT pay you until a distribution is available under the Plan.

Id.  As of March 20, 2009, Mr. Stepien was forty-seven years old.  Hackett Decl. ¶ 11.  The letters stated that the Funds would segregate the money owed according to the divorce decree, and would make payment to the plaintiff once Mr. Stepien became eligible.  Hackett Decl. Ex. MH-7, MH-8.

The plaintiff sent letters to the Funds demanding immediate payment and COBRA coverage.  Tonia Decl. Ex. PT-3, PT-6, PT-7.  She then filed a complaint in federal court on April 4, 2008.  Pl's Compl.

5

II.  Discussion

The plaintiff claims that the defendants violated ERISA, 42 U.S.C. §§ 1983, 1985, and 1986, and negligently inflicted emotional, psychological, physical, and financial harm on the plaintiff.  She argues that ERISA requires that she receive COBRA health coverage and an immediate disbursement of the funds allocated to her in the divorce decree.  She further alleges that the defendants colluded with Mr. Stepien by: failing to include in the divorce decree the Funds' administrative policies regarding immediate disbursement and COBRA coverage; failing to correct a misrepresentation made to the plaintiff by union employee "John Doe" that the plaintiff would receive COBRA coverage; failing to provide the plaintiff with a benefits booklet upon a telephonic request in the Fall of 2005; and failing to carbon copy the plaintiff in a letter sent to Mr. Stepien and his attorney even though his attorney asked the defendants to do so.

A.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the

absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden then shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>Id.</u> at 247-48.

A plaintiff's allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to defeat summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Liberty Lobby</u>, 477 U.S. at 248-49.  In addition, although pro se filings are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Zilich v. Lucht</u>, 981 F.2d 694, 694-96 (3d Cir. 1992).

    B.    <u>ERISA Violations</u>

The plaintiff claims that the Funds deprived the plaintiff of "her rights to COBRA" and of an immediate disbursement because the divorce decree did not state any restriction on her benefits.  The defendants argue that their actions both comply with and are mandated by federal law.  The Court grants summary judgment on the plaintiff's ERISA claims.

1.   <u>Claims for Medical Coverage from the Welfare Fund</u>

The plaintiff argues that the defendants deprived the plaintiff of her right to COBRA because union member "John Doe" told her former husband, who then told the plaintiff at the March 2007 proceeding, that medical coverage would continue. The defendants argue that the plaintiff failed timely to notify the Welfare Fund of the divorce, and Mr. Stepien's oral advice that health care would continue does not create an obligation on their part.[3]

COBRA amended ERISA to require employee benefit plans, like the Welfare Fund, to offer a plan beneficiary the option of continued coverage under the plan if he or she is no longer eligible for coverage because of a qualifying event. ERISA provides that "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). In a divorce situation, ERISA obligates the employee or the former spouse to notify the Welfare Fund "administrator of the occurrence of [the divorce] within 60 days after the qualifying

---

[3] The defendants additionally argue that the plaintiff can claim no damages as to her lack of COBRA coverage because she has not presented any evidence of unpaid claims. The Court grants summary judgment on the medical coverage claim based on untimely notification of the divorce, and therefore it will not consider this argument.

8

event." 29 U.S.C. § 1166(a)(3).

Under this framework, the plaintiff would have been eligible for continued coverage under COBRA because her divorce constituted a "qualifying event." The plaintiff or her former husband, however, were required under ERISA to notify the Fund administrator within sixty days after the divorce decree in order to qualify for this continued coverage. Id. The divorce decree was entered on November 6, 2006. The Health Fund first became aware of the divorce in April 2007, and it first received written notice of the divorce in June 2007, both well after the sixty-day limitation.

The fact that the plaintiff assumed her health coverage would continue because her former husband told her it would, as told to him by "John Doe," is insufficient to obligate the Welfare Fund to continue coverage. First, neither Mr. Stepien nor "John Doe" were or claimed to be employees of the Welfare Fund. Tonia Decl. ¶ 16; See Pl.'s Compl. ¶¶ 14, 34. As such, they were not agents of the Fund and their statements do not bind the Fund in any way. Second, ERISA precludes oral amendments to an employee benefits plan, and so Mr. Stepien's oral promise could not alter the Welfare Fund's obligations. Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163 (3d Cir. 1990) (holding that an ERISA welfare plan is not subject to an oral amendment communicated between an employer and plan beneficiaries

when the amendment was not reduced to a writing).

Nor is the oral misrepresentation of Mr. Stepien a basis for the application of the doctrine of equitable estoppel. "An ERISA beneficiary may recover benefits under an equitable estoppel theory upon establishing a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances." In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 58 F.3d 896, 907 (3d Cir. 1995). The extraordinary circumstances element "generally involve[s] acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." Jordan v. Fed. Express Corp., 116 F.3d 1005, 1111 (3d Cir. 1997).

The plaintiff has not presented sufficient evidence to state a viable equitable estoppel claim. The defendants were not parties to the divorce or the March 2007 proceedings, and they had no means to correct the oral advice. Additionally, it is undisputed that both Mr. Stepien and "John Doe" were not employees of the Funds, and neither of them had actual or apparent fiduciary power to amend the Welfare Fund plan. See Knoll v. Phoenix Steel Corp., 465 F.2d 1128, 1132 (3d Cir. 1972) (finding employees unreasonably relied upon a promise about pension fund disbursements because the promise was made by a person lacking appropriate authority). The plaintiff, therefore,

has not set forth specific facts to demonstrate that she reasonably relied on a statement made by the defendants, which makes any equitable estoppel claim untenable.[4]

Finally, the plaintiff's argument that the Welfare Fund knew of her divorce well within the sixty-day time frame because the Fund was aware as early as 2005 of her ongoing divorce proceedings is unpersuasive.  The plaintiff alleges that the Fund knew Mr. Stepien was going through a divorce from as early as June 6, 2005, and thus notification of the final divorce was unnecessary.  As the defendants point out, however, even if they were aware as early as June 6, 2005 that the plaintiff and Mr. Stepien were in the middle of a divorce, a "pending divorce" is not a qualifying event within the ambit of the plan or COBRA.  See 29 U.S.C. § 1163(3) (defining divorce or legal separation as

---

[4] Even if the plaintiff had presented sufficient evidence to support reasonable reliance, she has not put forward adequate evidence to constitute extraordinary circumstances.  To demonstrate bad faith, the plaintiff alleges in her complaint that during the Fall of 2005, she telephonically requested, but was denied, a benefits booklet.  She cites various legal statutes that she claims require the Fund to provide her with this information: "ERISA §§ 206(d)(3)(G), 206(d)(3)(H), 404(a); IRC §§ 414(p)(6), 414(p)(7) and ERISA §§ 206(d)(3)(A)-(C), 404(a); IRC 414(p)(1)-(3)."  Pl.'s Compl. ¶ 20.  None of these statutes, however, obligates the Welfare Fund to provide a spouse with general plan information.  ERISA does require a plan administrator, "upon <u>written</u> request of any participant or beneficiary" to furnish a copy of a plan description.  29 U.S.C. 1024(b)(4)(emphasis added).  The plaintiff never submitted a written request, however, and so any failure on the part of the Fund in providing a benefits booklet does not give rise to an inference of bad faith or fraud for purposes of equitable estoppel.

11

a qualifying event); Hackett Decl. Ex. MH-2, "Health Benefits Program" A16 (explaining that continued coverage applies to divorce or legal separation).

        2.    Claims for Payment from the Pension and Savings Funds

The plaintiff asserts that pursuant to her divorce decree, she was granted $11,500.00 from her former husband's Savings Fund and $45,730.22 from her husband's Annuity Fund (which is part of the Pension Fund), and that this decree requires immediate fund disbursement.  The defendants do not dispute that the plaintiff will be entitled to payment from the Pension and Savings Funds nor the amount of money the plaintiff will receive.  They do dispute, however, the plaintiff's argument that she is entitled to any immediate payment.  The defendants argue that the plaintiff is bound by the terms of the Plans themselves.  Under the Plans, participants are not eligible for lump sum distributions until the participant dies, retires, is separated from contributory service for twenty-four months or, for a Qualified Domestic Relations Order ("QDRO"), the participant reaches age fifty.  Hackett Decl. Ex. MH-7, MH-8.  The Funds sent letters to this effect to the plaintiff on July 31, 2007 and August 1, 2007, which the plaintiff admits having received.  Id.; Ludwig Dep. 17.

Under ERISA, pension plan benefits may not be alienated or assigned. 29 U.S.C. § 1056(d)(1). A limited exception to this rule exists for QDROs, which can assign accounts or the value of accounts to another. § 1056(d)(3)(A). A QDRO, however, cannot require a plan to provide a type or form of benefit, or any option, not otherwise provided under the plan. § 1056(d)(3)(D)(i). Nor can a QDRO require the plan to provide increased benefits. § 1056(d)(3)(D)(ii). A QDRO that attempted to do so would not be a QDRO, and therefore the benefit at issue would not be assignable. Additionally, ERISA would override any state court order that conflicted with the federal law. See Boggs v. Boggs, 520 U.S. 833, 841, 844 (1997)(holding that ERISA preempts conflicting state law).

The parties agree that the divorce decree is a QDRO under ERISA. However, because ERISA provides that a QDRO cannot require increased benefits or a type or form of benefit not otherwise provided by the plan, the divorce decree cannot make the plaintiff eligible for a lump sum distribution; such a distribution would amount to increased benefits and an unprovided form of benefit. It, therefore, would violate ERISA. Pursuant to the plan policy, the plaintiff will be eligible for benefits when her ex-husband dies, retires, is separated from contributory service for twenty-four months, or reaches age fifty. Only after one of those qualifying events takes place will the plaintiff

become eligible for a lump sum distribution.[5]

As the plaintiff stresses, the difficulty in this case is that the divorce decree did not specify that the plaintiff would receive her Funds award upon one of the above-mentioned qualifying events.  Although this imprecision in the drafting of the divorce decree is unfortunate, it cannot overcome ERISA's requirement that a QDRO not require a type or form of benefit not otherwise provided by the plan.

C.   The Plaintiff's § 1983 Claim

The Court grants summary judgment on the plaintiff's claims under 42 U.S.C. § 1983 because the plaintiff has not alleged the defendants are state actors.  This statute only creates a cause of action for plaintiffs alleging violations of constitutional rights pursuant to actions taken under color of state law.  Sameric Corp. of Del., Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).  None of the defendants listed in the plaintiff's complaint is a state actor.

---

[5] This is not to say that the plaintiff could not bring a claim against the defendants if, upon the availability of a distribution under the Plans, the plaintiff is not paid.  The Court only addresses the current availability of a lump sum payment, and not one at a future date.

14

D.   <u>The Plaintiff's § 1985 Claim</u>

The plaintiff alleges that the defendants violated her rights under 42 U.S.C. § 1985 in that the defendants conspired to deprive her of COBRA benefits and of an immediate disbursement from the Funds.  The defendants deny being part of any conspiracy to withhold information from the plaintiff and argue that the plaintiff has not alleged facts that can constitute a § 1985 claim.  Even taking as true the plaintiff's allegations, the Court grants summary judgment on her § 1985 claim.

Because the plaintiff has not specified under which section of this statute she seeks relief, the Court addresses each section in turn.  Section 1985(1) concerns conspiracies to prevent federal officers from performing their duties.  <u>Robinson v. Canterbury Vill., Inc.</u>, 848 F.2d 424, 430 n.5 (3d cir. 1988).  The plaintiff has not alleged that she is a federal officer and therefore, any claim under this section fails.  The first portion of § 1985(2) protects against conspiracies to obstruct justice in federal courts, by, for example, intimidating a witness.  <u>Brawer v. Horowitz</u>, 535 F.2d 830, 840 (1976).  None of the plaintiff's facts supports a claim under this provision.  The second portion of § 1985(2) creates a cause of action "against those obstructions of justice 'in any State or Territory' which have as their objects the denial of the equal protection of the laws."  <u>Id.</u> at 840.  To state a claim under this section, the plaintiff

must allege "class-based invidious discrimination," such as, for example, racism.  Id.  The plaintiff does not put forward any allegations of class-based discrimination and, therefore, any claim under this provision fails.  Finally, class-based discrimination is also a requirement to state a claim under §1985(3), which "permits individuals to enforce substantive rights against conspiring private parties."  Farber v. City of Paterson, 440 F.3d 131, 134-35 (2006).  Because the plaintiff has not alleged such discrimination, any claim under § 1985(3) must fail.

    E.   The Plaintiff's § 1986 Claim

The plaintiff argues that her COBRA and lump sum distribution denial also constitute a cause of action under 42 U.S.C. § 1986.  The defendants assert that the plaintiff has not alleged any facts that constitute a § 1986 claim.  To state a claim under § 1986, a plaintiff must first establish a cause of action under 42 U.S.C. § 1985.  Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980) ("Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also.").  As stated above, the plaintiff has not presented a viable § 1985 claim, and thus the Court grants summary judgment on her § 1986

claim as well.

    F.    Claims for Negligent Infliction of Emotional, Psychological, Physical, and Financial Harm

The plaintiff claims that because of her loss of COBRA and the failure to get her disbursement immediately, the plaintiff has suffered physical, emotional, and financial harm and requests $900,000 in "restitution." The defendants assert that these claims are preempted by ERISA, which eliminates state law actions for breach of contract and improper processing of a claim for benefits. ERISA expressly states that it "supersede[s] any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a). Because the plaintiff's state law claims of emotional, psychological, physical, and financial distress are inextricably linked to the Funds' COBRA coverage and disbursement, the claims are preempted. Pane v. RCA Corp., 868 F.2d 631, 635 (3rd Cir. 1989)(finding state law emotional distress claims preempted under ERISA because the claims arose out of benefits plan administration). The Court grants summary judgment on the plaintiff's state law claims.

III.    Conclusion

For the reasons herein stated, the defendants' motion

for summary judgment is granted.  Judgment is hereby entered on all claims in favor of the defendants.

An appropriate Order shall issue separately.